RUCKER *v.* STATE.*

(Division A. Nov. 12, 1928.)

[118 So. 716. No. 27302.]

*Corpus Juris-Cyc References: Criminal Law, 17CJ, section 3662, p. 317, n. 10; section 3664, p. 324, n 62; Homicide, 30CJ, section 561, p. 316, n. 68.

*Fred B. Smith,* for appellant.

*James W. Cassedy, Jr.,* Assistant Attorney-General, for the state.

Cook, J. The appellant, Louie Rucker, was indicted and tried in the circuit court of Tippah county for the murder of Oscar Conner, and was convicted of manslaughter, and sentenced to serve a term of six years in the penitentiary; and from this conviction and sentence this appeal was prosecuted.

The homicide occurred between ten and eleven o'clock, at night, in front of the home of the father of the deceased, where a negro festival was going on, and when a large number of negroes were present. The state offered the testimony of one eyewitness, a negro woman, who testified that she was standing just outside of the yard gate in front of the house a short distance from the deceased at the time he was shot. She testified that the appellant called the deceased as he was standing on the steps at the front of the house; that the deceased answered and turned around, and, just as he did so, the appellant shot him with a pistol through the chin and neck, from which wound he died shortly afterwards; that the deceased made no move toward the appellant, and was doing nothing at the time he was shot; that, at the time he fired the shot, the appellant was standing in the range of the light of certain automobile lamps which were burning, and, immediately after the shot was fired, he went into the house.

Two witnesses testified that, just before the shot was fired, the appellant passed them at the yard gate, and they heard him say in an angry tone, "Oscar Conner is who I am looking for." One of these witnesses testified that he was staggering toward the house as if he were drunk, and had a pistol in his hand. Several witnesses testified for the appellant that his reputation for peace and violence was good, while five witnesses testified that the appellant was in a room of the house before the shooting, when the deceased was fighting with his father and two brothers, and was put out of the house,

and that appellant remained in the house until after the shooting.

During the cross-examination of a witness for the appellant, he testified that he was in the house with the appellant at the time of the shooting, and for some time prior thereto, and that the appellant did not leave the house, and did not fire the shot. This witness was asked whether he had any whisky or had drunk any whisky on that occasion, and at first denied having seen or drunk any whisky that night. He was then presented with a written statement purporting to be signed by him to the effect that on this night he had purchased a half pint of whisky at the house where the killing occurred, and he admitted that he wrote and signed the statement. He was then asked if it was not true that he and appellant, and others, including the deceased, were in a drunken row at the time of, and prior to, the killing. The witness denied this, and again denied that he had been drinking on this occasion. The court then admitted in evidence the written statement, and it was read to the jury. The witness then admitted that he had been drinking whisky prior to the shooting.

The appellant assigns, as error, the admission of this written statement, and argues that the effect thereof was to contradict the witness about a collateral and immaterial matter. The condition of this witness as to sobriety, and his consequent ability to know and appreciate the facts to which he was testifying, was a legitimate subject of inquiry on his cross-examination. He at first testified that he did not have, and had not drunk, any whisky on this occasion; but this denial did not cut off the right to further cross-examine the witness on this point. When confronted with the signed statement, he admitted that he wrote and signed it, and that it stated the truth as to the purchase of whisky, and that he had drunk some of the whisky prior to the time of the shooting. This being true, the statement did not in any particular contradict

the witness; and we are unable to see how the appellant was prejudiced by the admission thereof in evidence.

Over the objection of the appellant, the sheriff was permitted to testify that, when he arrested the appellant, about an hour after the killing, he was at home in bed, and was very drunk; and he now asserts as error the admission of this testimony. The appellant denied that he was drunk at the time of the killing, but admitted that he drank some whisky before the shooting, and, after the shooting, drank more, and was very drunk when he was arrested. That the appellant was drunk when he was arrested was testified to by him in response to questions propounded by his counsel on redirect examination; and, if it was error to admit the testimony of the sheriff to the same effect, it was not such prejudicial error as would require or justify a reversal.

The appellant next contends that the evidence is insufficient to support the verdict. While it is true that only one eyewitness testified that the appellant did the shooting, and there is much in the evidence to discredit this witness, still we think the disputed issue of fact was properly submitted to the jury, and that we are not warranted in disturbing their finding. This witness testified positively that she saw the appellant fire the fatal shot, and she is corroborated by the testimony of two witnesses that immediately before the shooting they saw the appellant going toward the house where the deceased was standing, and that he had a pistol in his hands, and was heard to say, "Oscar Conner (the deceased) is the man I am looking for." This evidence, if believed, is clearly sufficient to support the verdict, and the judgment of the court below will therefore be affirmed.

*Affirmed.*